IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **JASON HAMMETT,** | ) |
| Plaintiff, | ) |
| vs. | ) CASE NO: |
| **46 ENTERTAINMENT, INC.,** a corporation, | ) DEMAND FOR JURY TRIAL |
| Defendant. | ) |

## COMPLAINT

**COMES NOW** the Plaintiff, **JASON HAMMETT**, and asserts the following claims against **46 ENTERTAINMENT, INC.,** a corporation; to-wit:

### PARTIES

1. **JASON HAMMETT** [hereinafter referred to as Hammett] is an individual over the age of majority and was at all times relevant to the allegations made in this Complaint a citizen and resident of Dothan, Houston County, Alabama.

2. Upon information and belief, **46 ENTERTAINMENT, INC.** [hereinafter referred to as 46] is a corporation organized pursuant to the laws of the State of Tennessee and/or a State other than the State of Alabama and maintains its principal place of business in Gallatin, Tennessee.

## JURISDICTION

3. This Court has jurisdiction of this cause pursuant to 28 U.S.C. §1332(a) because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is a dispute between citizens of different states.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391 (a) as a substantial part of the events or omissions giving rise to this action occurred in this district.

## GENERAL ALLEGATIONS

5. On June 2, 2018, Hammett was working under the International Association of Stage and Theatric Employees, Local Union #78, at Heritage Park in the City of Cullman, located in Cullman County, Alabama.

6. That day, his job duties and responsibilities required him to set up a stage for a concert with performer, Eric Church.

7. On June 2, 2018, Hammett was unloading drum risers from a tractor trailer to be utilized by the performer, Eric Church. The drum risers were contained in a 4' x 8' box with wheels, and weighing approximately 800 pounds.

8. On top of the box were a set of aluminum steps that are part of the stage set-up to go along with the risers.

9. For use as a loading dock, two flat bed trailers had been parked side by side.

10. Because the loading dock was higher than the tractor trailer that Hammett was unloading the box from, a 6' aluminum ramp was being used to wheel the box uphill and onto the loading dock.

11. While Hammett and four other workers were moving the box uphill on the ramp from the tractor trailer to the loading dock, the aluminum steps on top of the box slid off the box due to the uphill angle combined with the steps coming in contact with the cross bar in the roof of the trailer.

12. Two of the workers were guiding and pulling the box on the ramp and Hammett and another worker were pushing the box uphill on the ramp when the steps fell from the top of the box injuring Hammett.

13. The tractor trailer that was being unloaded; the two flat bed trailers that were being used as a loading dock; the aluminum ramp that was being used to move the box at an uphill angle; and the aluminum steps that were not attached on top of the box containing the drum risers, combined to created an unreasonably dangerous condition and posed an unreasonable risk of harm to Hammett.

14. "46" knew or in the exercise of reasonable care should have known the above-mentioned equipment and process used for stage set-up for a concert with performer, Eric Church, was unreasonably dangerous. The condition of the equipment and process caused Hammett's injuries.

15. Hammett sustained the following injuries, damages and harm:

      a.      Bruises, contusions, and crush injuries to his left hand requiring multiple surgeries to correct the same;

      b.      Months of in-patient and out-patient physical rehabilitation and therapy;

      c.      In-home assistance with the activities of daily living;

      d.      Physical pain;

      e.      Mental anguish and emotional distress, including fright, nervousness, grief, anxiety, worry, humiliation, shock, embarrassment, apprehension, and ordeal;

      f.      Permanent physical injury/disfigurement;

      g.      Costs of medical care and prescription medication;

      h.      Out-of-pocket costs, including the costs for in-home assistance with the activities of daily living; and

      i.      Loss of enjoyment of life;

## COUNT I

## NEGLIGENCE

16. Hammett adopts and incorporates all preceding paragraphs, as if fully set out here.

17. On June 2, 2018, "46" owed Hammett the following duties of reasonable care:

a. To provide and maintain a reasonably safe area for workers which included Hammett, in areas where Hammett carried out its work in performing its maintenance contract, and where Hammett and employees of other contractors were present as part of their on-the-job duties;

b. To warn workers about dangerous or unsafe conditions in the area where Hammett worked that it knew, or should have known; and

c. To warn workers of dangerous or unsafe conditions in the area where Hammett worked that "46" created and had knowledge of or in the exercise of reasonable care would have known.

18. "46" breached these duties.

19. "46" breached these duties when it:

a. Failed to reasonably operate the area where Hammett worked;

b. Failed to reasonably maintain the area where Hammett worked;

c. Failed to reasonably manage the area where Hammett worked;

d. Failed to reasonably inspect the area where Hammett worked;

  e. Unreasonably failed to warn of the unsafe condition of the equipment and process for unloading;

  f. Failed to inspect; and

  g. Created an unsafe and hazardous condition.

20. "46"'s breaches of its duties proximately caused Hammett's injuries and damages that he describes in the previous paragraphs.

## COUNT II

## WANTONNESS

21. Hammett adopts and incorporates all preceding paragraphs, as if fully set out herein.

22. On June 2, 2018, "46" owed Hammett the following duties of reasonable care:

  a. To provide and maintain a reasonably safe work site for employees, which included Hammett;

  b. To warn workers about dangerous and unsafe conditions in the area where Hammett worked that it knew, or should have known about; and

  c. To warn workers of dangerous or unsafe conditions in the area where Hammett worked that "46" created and had knowledge of or in the exercise of reasonable care would have known.

23. "46" breached these duties in a wanton manner.

24. "46" breached these duties when it:

    a. Wantonly failed to reasonably operate the workplace in which Hammett was an employee;

    b. Wantonly failed to reasonably maintain the workplace where Hammett was an employee;

    c. Wantonly failed to reasonably manage the workplace in which Hammett was an employee;

    d. Wantonly failed to reasonably inspect the workplace where Hammett was an employee;

    e. Wantonly failed to warn of the condition of the equipment and process for unloading;

    f. Wantonly failed to inspect; and

    g. Wantonly created an unsafe and hazardous condition.

25. "46"'s wanton conduct proximately caused Hammett's injuries and damages he describes in the previous paragraphs.

WHEREFORE, on the basis of the foregoing, Jason Hammett requests that the jury selected to hear this case render a verdict for him and against 46 Entertainment, Inc. ("46"), separately and severally for compensatory damages in the amount that will adequately compensate for the injuries and damages sustained by him, for exemplary damages in the amount that will adequately reflect the

wrongfulness of "46"'s conduct. Further, Jason Hammett requests that the Court enter judgment on the jury's verdict and award interest from the date of the judgment and costs.

Respectfully submitted,

*/s/ Jeffrey C. Kirby*
Jeffrey C. Kirby, Esquire (ASB-7574-I66J)

OF COUNSEL FOR PLAINTIFF:
Jeffrey C. Kirby, Esquire (ASB-7574-I66J)
William T. Johnson, III, Esquire (ASB-2310-M69J)
KIRBY JOHNSON, PC
One Independence Plaza Drive, Suite 520
Birmingham, AL  35209
(205) 458-3553 [telephone]
(205) 458-3589 [facsimile]
E-mail:      jkirby@kirbyjohnsonlaw.com
             bjohnson@kirbyjohnsonlaw.com

## JURY DEMAND

**JASON HAMMETT** demands a jury trial on all issues in this action.

*/s/ Jeffrey C. Kirby*
Jeffrey C. Kirby
Of Counsel for Plaintiff

## REQUEST FOR CERTIFIED MAIL SERVICE BY CLERK

The Plaintiff hereby requests that the clerk serve the Defendant by Certified Mail, return receipt requested pursuant to Rule 4.1(c) of the Federal Rules of Civil Procedure.

_____
Jeffrey C. Kirby

## PLEASE SERVE DEFENDANT VIA CERTIFIED MAIL WITH RETURN RECEIPT AT:

46 Entertainment, Inc.
c/o Registered Agent – Luke D. Bottorff
6688 Nolensville Road
Suite 111229
Brentwood, TN 37027-8833